FILED

07 NOV -9 AM 10: 27

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY:        LP        , DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Magistrate Case No. '07 MJ 2632 |
| Plaintiff, | ) COMPLAINT FOR VIOLATION OF: |
| v. | ) |
| OSVALDO CASTRO-GAXIOLA, | ) Title 21, United States Code, Sections 846 and 841(a)(1) - Conspiracy to Distribute Methamphetamine; Title 18 United States Code, Section 2 - Aiding and Abetting |
| Defendant. | ) |

The undersigned complainant being duly sworn states:

Beginning at a date unknown and continuing up to and including October 31, 2006, within the Southern District of California, and elsewhere, defendant OSVALDO CASTRO-GAXIOLA did knowingly and intentionally conspire with other persons known and unknown, to distribute 500 grams and more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II Controlled Substance; in violation of Title 21 United States Code, Sections 846 and 841(a)(1), and Title 18, United States Code, Section 2.

And the complainant states that this complaint is based on the attached statement of facts, incorporated herein by reference.

_____
Signature of Complainant

Sworn to before me and subscribed in my presence this _____ day of November, 2007.

_____
HON. CATHY A. BENCIVENGO
UNITED STATES MAGISTRATE JUDGE

## STATEMENT OF FACTS

On October 31, 2006 a traffic stop was conducted on Osvaldo Castro-Gaxiola (Castro) by the National City Police Department (NCPD). During the traffic stop approximately five pounds of methamphetamine was seized from the vehicle Castro was driving. The methamphetamine was concealed inside a panel on the interior of the vehicle. Castro was arrested by the NCPD and charged with California Health and Safety Code Sections 11377 (A), possession of methamphetamine; 11378, possession of methamphetamine for sale; and 11379 (A), transportation of methamphetamine.

From July 2006 through October 2006, pursuant to court-authorized wiretaps, agents from the Drug Enforcement Administration (DEA) intercepted several calls between a methamphetamine trafficking organization headed by Andres Chavez-Chavez and a methamphetamine trafficking group in which Castro and other individuals were involved. These intercepted calls involved the delivery of methamphetamine by the Chavez-Chavez group to Castro's drug trafficking group. Based upon these intercepts, agents were able to identify four separate deliveries of methamphetamine to Castro's drug trafficking group; each of these deliveries is believed to have been five pounds of methamphetamine.

As an example of the drug transactions, prior to August 7, 2006, agents intercepted calls in which an associate of Castro requested "five" – believed to be five pounds of methamphetamine. On August 7, based on intercepted calls, DEA agents observed Castro's associate meet with Andres Chavez-Chavez at a gas station. Agents then observed the associate and Andres Chavez-Chavez drive to a location, an apartment complex, used by Castro to complete the five-pound transaction. Due to the layout of area, agents were not able to see the transaction completed, but based on the intercepted calls and the October 31st seizure, agents determined that Castro and his associates received five pounds of methamphetamine from Chavez-Chavez.

On August 14, 2006, in a phone call between Andres Chavez-Chavez and Castro, Castro informed Chavez-Chavez that Castro "is counting the money right now." Agents thereafter observed David Chavez-Chavez, a courier used by Andres Chavez-Chavez, arrive at the apartment complex used by Castro, remove a package from the trunk of his vehicle and go to the area where agents believe that Castro and his associates maintained an apartment.

On September 24, 2006, in a phone call between Andres Chavez-Chavez and Castro, Castro told Chavez-Chavez that "he (Castro) will need some (methamphetamine) on Thursday." On September 28, 2006, numerous phone calls were intercepted between Andres Chavez-Chavez and Castro's group. For example, in a call between Chavez-Chavez and an associate of Castro, Andres Chavez-Chavez told the associate that Chavez-Chavez would send him/her the "five hours" (5 pounds of methamphetamine). Agents thereafter observed David Chavez-Chavez arrive at the location used by Castro, remove a car battery from the trunk of his vehicle (based upon the investigation, car

batteries were used by the Chavez-Chavez group to transfer drugs), and proceed towards the area of the complex believed to have been used by Castro and his associates.

On October 31, 2006, in a phone call between David Chavez-Chavez and Castro, Castro informed Chavez-Chavez that Castro "is ready right now." Agents subsequently observed Chavez-Chavez arrive at the location used by Castro, remove a car battery from the trunk of his vehicle, and go to the area of the complex believed to have been used by Castro. Agents later observed Castro and an associate, carrying a red cooler or package to a gray 1998 Chevrolet Astro minivan. Agents contacted the NCPD, who subsequently conducted a traffic stop on the above minivan. During the traffic stop, five pounds of methamphetamine were seized. The five pounds of methamphetamine were sent to the Southwest DEA Laboratory for analysis. The net weight of the methamphetamine was 2235 grams, 66.2% pure, with a total pure weight of 1479 grams.